# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA      :

                  :

      - v -         :

                  :      **CRIMINAL NO. 23-443-RC**

**ELLIOT RESNICK,**      :

        Defendant.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENSE SENTENCING MEMORANDUM

Elliot Resnick is a mild-mannered man of letters who holds a Ph.D. and has no criminal history.  He is a kind, honest, and altruistic member of his community and an essential support to his 78-year-old mother, who suffered a stroke in 2019.  Mr. Resnick's actions on January 6, 2021, were aberrational and out of character.  Having accepted responsibility for his conduct, Mr. Resnick will appear before the Court for sentencing on September 19, 2024.  We ask the Court to adopt the recommendation of U.S. Probation Department and sentence Mr. Resnick to three years' probation.

1.    **Mr. Resnick's Personal History and Characteristics and the Nature and Circumstances of his Offense.**

Born in 1983, Mr. Resnick is a 41-year-old man with no criminal history.  He was raised in an Orthodox Jewish family primarily in the Washington Heights area of Manhattan in a two-parent household with two siblings.  He holds a Ph.D. in Jewish history from Yeshiva University in New York and worked for 15 years at *The Jewish Press*, the largest independently weekly Jewish newspaper in the

United States.  Mr. Resnick started as a reporter and rose through the ranks, ultimately becoming Editor-in-Chief in 2018.  He lost that job as a result of his January 6, 2021 offense conduct and is now employed at a rare and used Jewish bookstore in Brooklyn.

Mr. Resnick's father, Dr. Lawrence Resnick, M.D., was a renowned cardiologist and professor at Cornell who died of pancreatic cancer in 2004.  In the months leading up to his father's death, Mr. Resnick was his father's "constant caretaker."  **Exhibit A** at 1 (Letter of Gillie Resnick-Sanowicz).  "Attending college during the day and taking the night shifts at the hospital after classes," Mr. Resnick would "dress his bed sore wounds, carry him to use the restroom, etc. Whatever was needed, Elliot was gentle and sensitive to our father's dignity and his wants big or small."  <u>Id.</u>

Mr. Resnick's mother, Molly Resnick née Sidi, is now 78 years old.  She was a producer at NBC News who stopped working in 1986 to spend more time with her young children.  Five years ago she suffered a stroke, so Mr. Resnick moved in with her and has been her support and caretaker ever since.  As Ms. Resnick explains in her letter of support, "I love all my children, but none treats me as well as Elliot. . . . [I]t is Elliot who has been the most devoted and helpful ever since I suffered a stroke in August 2019. "  **Exhibit B** at 1–2.  Mr. Resnick "goes shopping for me, gets my mail, pays my bills, fill ups the car with gas, and accompanies me on errands in the city."  <u>Id.</u> at 2.  "I truly have become reliant on Elliot in many ways. Not just for physical chores and tasks, as I mentioned, but for my spirit."  <u>Id.</u>  She

asks the Court to impose a sentence of probation because she believes her son has learned from his offense and "prison time will hurt not just him but me."  Id.

Mr. Resnick's siblings, Gillie Resnick-Sanowicz and Rabbi Raleigh Resnick, have also written letters of support.  See **Exhibits A and C**.  They describe him as a constant support and a radiant presence in their lives.  His brother writes: "From being a devoted caretaker of our mother (may she be well), to leading a humble and altruistic life, to simply being honest to a fault, to being a kind soul – I don't think you'll find many people who lead as virtuous a life."  Ex. C at 1.

Mr. Resnick's good character is also attested in the many appended letters of support.  See **Exhibit D** (Letter of Hermnio Martinez) ("In my opinion and experience, Elliot is an extremely kind, compassionate, idealistic and empathetic person who is committed to his family and community."); **Exhibit E** (Letter of Tamar Moskowitz) ("[A]s my grandfather aged and had a difficult time walking, Elliot accompanied him to Synagogue, walking slowly next to him to assist whenever needed."); **Exhibit F** (Letter of Jeff Gunzenhauser, M.D.) ("Concerning his character, Elliot is one of the kindest, learned interesting, logical, spiritual, and genuine people I have ever encountered in my life."); **Exhibit G** (Letter of Avi Ciment) ("Elliot is an asset, trying to improve the world around him and is always willing to lend a hand to charitable causes without recompense."); see also **Exhibits H–K** (additional letters of support).

Against this background, Mr. Resnick's offense conduct on January 6, 2021 was aberrational.  Mr. Resnick supported Donald Trump but had never previously

attended a Trump rally.  When President Trump and others said that there had been outcome-determinative fraud that affected the result of 2020 election, Mr. Resnick believed him, and he went to the rally in Washington, D.C., on January 6, 2021, because the President said it was important.  Mr. Resnick listened to the President's speech at the Ellipse.  A protest at the Capitol had been advertised, so Mr. Resnick went there after the speech to support the President and make his voice heard.  The barricades were already down by the time he arrived, so he walked right up and joined the crowd.

What happened next is described in detail in the statement of offense submitted in connection with Mr. Resnick's plea and in the presentence investigation report ("PSR").  It was also the subject of a meeting in which Mr. Resnick voluntarily responded to detailed questions from the U.S. Attorney's Office and the FBI.  Mr. Resnick takes full responsibility for his conduct, which included not only entering the Capitol without permission but also encouraging and helping others to do so.  Mr. Resnick also briefly reached up and grabbed hold of the arm of a Capitol Police officer who was spraying a chemical irritant toward Mr. Resnick and others.  (Less than three seconds later officers struck and pushed down Mr. Resnick; he did not resist that action and did not again touch an officer.)

Mr. Resnick's behavior on January 6 was as out of character as it was unacceptable.  Mr. Resnick is a gentle and law-abiding citizen who has never been in any kind of trouble before.  Even on January 6 his behavior was not unmitigated—a few minutes before he held the arm of a Capitol Police officer, Mr.

Resnick helped an officer by picking up a clip of bullets that had fallen from the officer's belt and returning it to him.

Mr. Resnick began to experience the consequences of his offense long before sentencing. He lost his job as Editor-in-Chief of *The Jewish Press* in May 2021 as a direct result of his January 6 conduct and then experienced the only period of unemployment in his adult life before finding a much less remunerative and prestigious new job in a bookstore. On March 16, 2023, Mr. Resnick was arrested for the first time in his life and began Pretrial supervision. On January 30, 2024, he pled guilty to a felony, thereby losing valuable civil rights for the rest of his life.

**2.     The calculation of the advisory Guidelines range.**

As expressly permitted by his plea agreement with the government, Mr. Resnick asserts that he qualifies as a zero-point offender within the meaning of U.S.S.G. § 4C1.1 and should therefore receive a two-level downward adjustment in his advisory Guidelines range. Accordingly, the final total offense level should be 9 (not 11), and the advisory Guidelines range should be 4–10 months (not 8–14 months). (Both ranges are in Zone B of the Guidelines Sentencing Table.)

Mr. Resnick therefore objects to the PSR's legal conclusion that the zero-point offender adjustment does not apply in this case. The PSR takes the position that he does not qualify for this adjustment "because he created a credible threat of violence in connection with the offense." PSR ¶ 37, citing § 4C1.1(a)(3). In particular, the PSR notes that, while Mr. Resnick was pushing on a closed door, a *different person* used violence against a Capitol Police officer who responded. Id.

Mr. Resnick qualifies for the Zero-Point Offender adjustment because he "did not use violence or credible threats of violence in connection with the offense." § 4C1.1(a)(3).  The PSR's argument to the contrary incorrectly glosses "use" as "create," and it glosses "threat" as "risk."  That is not what § 4C1.1(a)(3) means. "[A] 'credible threat of violence' is a believable expression of an intention to use physical force to inflict harm."  United States v. Bauer, 21 Cr. 386 (TNM), --- F. Supp. 3d ----, 2024 WL 324234, at *3 (D.D.C. Jan. 29, 2024); see also United States v. Yang, 23 Cr. 100 (JDB), 2024 WL 519962, at *4 (D.D.C. Feb. 9, 2024).  Mr. Resnick did not use any such expression.  It is not legally significant that a different person used violence.  "The relevant text requires that '*the defendant* did not *use* violence or credible threats of violence in connection with the offense.'  The inquiry turns on the actions of the defendant himself or herself, not the actions of others." Yang, 2024 WL 519962 at *4 (citing § 4C1.1(a)(3), emphasis supplied in Yang).  See also United States v. Hernandez-Barajas, 71 F.4th 1104, 1106 & n.2 (8th Cir. 2023) (reaching same conclusion with respect to similar language in § 2D1.1(b)(2)). Accordingly, the weight of authority holds that a January 6 defendant who did not himself use violence or threats of violence is eligible for the Zero-Point Offender adjustment notwithstanding the violence used and threatened by others that day. See, e.g., Yang, 2024 WL 519962 at *5 (collecting cases).

**3.   The parsimonious sentence under § 3553(a).**

While the Court must calculate the Guidelines range, the Court "may not presume that the Guidelines range is reasonable," but rather "must make an

individualized assessment based on the facts presented." Gall v. United States, 552 U.S. 38, 50 (2007).  The Cout is guided by "the parsimony principle, a broad command that instructs courts to 'impose a sentence sufficient, but not greater than necessary, to comply with' the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation."  Dean v. United States, 581 U.S. 62, 67 (2017) (citing 18 U.S.C. § 3553(a)).

In this case, the Probation Office has recommended a noncustodial sentence of three years' probation, and we ask the Court to adopt the Probation Office's recommendation.  The Court should give the Probation Office's recommendation considerable weight given its expertise and experience in these cases.  In addition to Probation's general expertise in sentencing and supervision, the District of the District of Columbia's Probation Office has prepared reports for more than 800 defendants in cases stemming from the events of January 6, 2021.  Probation is therefore in the best position to compare defendants across cases, to take into account their distinguishing personal and offense characteristics, and to make recommendations that avoid unwarranted sentencing disparities.  Cf. § 3553(a)(6).

The recommended sentence of three years' probation is a sufficient sentence under § 3553(a) because the nature and circumstances of Mr. Resnick's offense are mitigated by his personal history and characteristics.  See § 3553(a)(1).  In particular, Mr. Resnick's offense—the first and only criminal conduct in his life either before or after January 6, 2024—is aberrational and out of character.  Cf. U.S.S.G. § 5K2.20 (policy statement on aberrant behavior).  Mr. Resnick promptly

accepted responsibility for his offense in this case and has used the time since his offense to move forward with new employment and to continue his positive activities, including especially his mother's support and care.

Regarding the purposes of sentencing, § 3553(a)(2), Mr. Resnick has already been punished and deterred by the loss of the job at which he spent his entire career and by the fact of his felony conviction in this case. See § 3553(a)(2)(A)–(B). A first felony conviction is itself a significant sanction carrying life-altering collateral consequences. See generally United States v. Nesbeth, 188 F. Supp.3d 179, 182 (E.D.N.Y. 2016) ("Today, the collateral consequences of a felony conviction form a new civil death. Convicted felons now suffer restrictions in broad ranging aspects of life that touch upon economic, political, and social rights."). On top of that, "the 'substantial restriction of freedom' involved in a term of supervised release or probation" is an additional significant punishment and deterrent. Gall, 552 U.S. at 48 (approving of below guidelines probationary sentence).

A term of probation is also sufficient for the sentencing purposes of protection of the public and rehabilitation. § 3553(a)(2)(C)–(D). There is no need to incapacitate Mr. Resnick, a 41-year-old man with no criminal history who the Probation Office has identified as not a danger to the community. See Sentencing Recommendation at 2. And "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

Conversely, any sentence of imprisonment would be greater than necessary in light of Mr. Resnick's mitigating personal characteristics and in particular the

devoted, live-in daily assistance that he provides to his mother, a 78-year-old stroke survivor.  She writes:

> I ask you therefore to please be lenient with my son.  I think he has learned his lesson, and prison time will hurt not just him but me.  If you could find it in your heart, therefore, to only sentencing him to probation, I would be ever so grateful.

Ex. B at 2.

Imposing a noncustodial sentence in this case would not create any unwarranted sentencing disparities.  Cf. § 3553(a)(6).  Courts in this District have imposed noncustodial sentences in several § 231(c)(3) Capitol breach cases, including in cases involving significantly more aggravated conduct.  See, e.g., United States v. Brian Preller, 23 Cr. 45 (TMN); United States v. Eric Gerwatowski, 22 Cr. 125 (JMC); United States v. Luis Colon, 21 Cr. 160 (TJK); United States v. Matthew Council, 22 Cr. 207 (TNM) (defendant convicted not only of violating § 231(c)(3) but also of assaulting officers in violation of 18 U.S.C. § 111(a)(1)); United States v. Timothy Allen Hart, 21 Cr. 540 (DLF) (defendant overran well-marked barriers manned by uniformed officers at the Peace Circle, in the first breach of the restricted Capitol grounds, and smoked marijuana in the Rotunda); United States v. William Isaacs, Sandra Parker, et al., 21 Cr. 28 (APM) (these two militia-involved § 231(a)(3) defendants donned military gear in preparation for violence at the Capitol, failed to accept responsibility, and were convicted at a jury trial).  Although many noncustodial sentences in felony cases have included a period of home detention, that condition would not be appropriate in Mr. Resnick's case because he needs to assist his mother with errands (rather than vice versa).

Finally, Mr. Resnick is easily distinguishable from John Gordon, whom this Court sentenced to six months' imprisonment for violating § 231(a)(3).  See United States v. John Gordon, 22 Cr. 343 (RC).  In terms of background, Mr. Resnick has zero criminal history, whereas Gordon had "a long, violent criminal history." Id., Dkt. No. 34 at 2 (Gov't Sent'g Memo).  In terms of conduct, Mr. Resnick never used or advocated violence, whereas Gordon yelled obscenities at Capitol Police officers and "began repeatedly throwing a round, softball size, hard object that may have been a rock, and that may have weighed approximately one to three pounds at the North doors even while officers were standing just behind the doors and spraying chemical irritants toward him to disperse the mob. He then charged the doors and kicked them with enough force to cause damage." Id.  Mr. Resnick's family obligations further distinguish him.

* * * * *

The Court should adopt the recommendation of the Probation Office and sentence Mr. Resnick to three years' probation.

Dated:      New York, New York
            September 4, 2024

                              Respectfully submitted,
                              Federal Defenders of New York
                    By:    /s/
                           _____
                           **Clay H. Kaminsky**
                           Attorney for Defendant
                               **Elliot Resnick**
                           52 Duane Street - 10th Floor
                           New York, New York 10007
                           Tel.: (212) 417-8749

# EXHIBIT A

Dear Judge Contreras,

My name is Gillie Resnick-Sanowicz and Elliot Resnick is my big brother.

Since I can remember, starting at three years old, Elliot has taken care of me in the most gentle and loving manner. He walked me to school each morning and held my hand. He would enjoy making me smile and laugh by stomping the leaves in the fall and saying in a funny voice "crunch, crunch". As I got older, Elliot would play board games, ping pong, help me with my hand eye coordination in sports like basketball and catch when I asked, and even read books to me though that wasn't his favorite thing to do. I have saved Elliot's letters he would send to me from sleepaway camp with stickers and drawings that he knew I would enjoy. He would also come home with an extra bags of stuffed animals he had used his spending money to win at amusement parks for me.

When Elliot was 20 years old, our father was diagnosed with pancreatic cancer. Elliot was a constant caretaker for my father. Attending college during the day and taking the night shifts in the hospital after classes. He had to attend to my father in more ways than anyone should need to. He had to dress his bed sore wounds, carry him to use the restroom, etc. Whatever was needed, Elliot was gentle and sensitive to our father's dignity and his wants big or small. I'm sure this was a very difficult period in Elliot's life, and still he was never angry or showed any signs of letting his emotions out on others.

During that time period, my father wanted to celebrate Passover with his mother in Chicago. My mother and father flew, but Elliot and I were in charge of driving the car over from New York to meet them there. On the drive to Chicago, I really wanted to make a stop in my childhood home in the suburbs of Detroit, MI. Elliot wasn't excited about going an hour out of the way and adding to the already many hours of driving. But he knew how much it meant to me and he surprised me and went off the exit in the direction of Detroit - which really made me so happy at a time when things were a bit intense and emotionally difficult.

Our family is a mix of different ways of practicing orthodox Judaism. Some of us are part of the Chassidic sect of orthodox Jews and Elliot and my father were not. Elliot is so careful to be sensitive and respecting the way of life we have. My husband is a rabbi in a center that welcomes all types of Jews to come and learn about Judaism. Elliot attends our services whenever he comes to our home for Shabbat and he engages and is gracious and kind to our community members and they truly appreciate his presence.

My mother had a stroke in the summer of 2019. Elliot volunteered to move in with my mother to take care of her until she was back on her feet and back to being

independent. In February 2020, our mother finally felt up to being home alone and Elliot moved back to his own apartment. Of course we all know that a month later Covid hit. Rather than leave my mother alone and risk germs coming in from living apart, Elliot once again moved in with our mother to take care of her and keep her company. We as siblings, could not have been more grateful.

Even now as adults, Elliot is always there and supportive as a big brother, brother in law, and uncle. When we moved to our apartment, Elliot came to help us unpack. When we were spending our first holiday of Passover on our own without any family in comfortable walking distance (since we are not allowed to drive etc.), Elliot made the 2 ½ hour walk from Washington Heights because he knew I would be so happy to have his company and definitely hinted to that notion before the holiday started.

Elliot comes to visit and spend time in our home with my eight children. My kids feel so comfortable with him as an uncle that my daughter will call him to help her with her math homework since that was never my favorite subject. My 2 year old eagerly climbs onto the couch next to him and snuggles up next to him. He sometimes brings a book with eyes asking for Elliot to read the book - which again Elliot does even though it's not his favorite. Elliot is helpful to me with cleaning up after big meals we host and will even pitch in with preparing the food when he can. I have had numerous times where we had a personal emergency, and Elliot is someone I can rely on to come and watch my children. When we come to visit my mother with our children, Elliot will set up our old Nintendo set for the kids, he will play outside with them and show them tricks and share athletic tips.

I could go on and on about Elliot's character and all his attributes that make him a brother I love, but this will have to suffice for now. So, I am asking, Your Honor, therefore, to please be lenient on my brother since he truly is a blessing to those around him.

Thank you.

Gillie Resnick-Sanowicz

# EXHIBIT B

Dear Judge Contreras,

Which mother doesn't love her son?  I know I am biased, but Elliot is a truly exceptional special boy and I plead with you to be lenient in his case.

I love all my children, but none treats me as well as Elliot.  That is true of the last 20 years – ever since my husband, Dr. Lawrence Resnick (Professor of Medicine, N.Y. Hospital), passed away after a sudden short bout with pancreatic cancer in 2004.

Let me tell you about myself.

I was born in Bulgaria and we escaped its communist rule to come to the free newly established Jewish state of Israel in 1949 when I was 3 years old.

I was an only child, beloved by my family, and raised with a great education and values.

I graduated from the Hebrew University of Jerusalem in Political Science and English Literature, fell in love with the American Constitution, and always dreamt of coming America which I did in 1972 and became a citizen here in 1978.

I was a TV producer at PBS and NBC News and felt so fortunate to live in what I felt is the greatest country in the world.

I was a secular Jew and a trip around the world re-established my connection to my Jewish heritage and G-dly morality.

I married my husband, an Orthodox Jew and proud American, and we raised our three children with strong moral values and as true patriots.

My oldest son is practicing Rabbi in N. CA together with his wife and 10 children. He runs Chabad of the TriValley. My youngest daughter is a talented educator and a mother of 8.

Elliot got his PhD in American Jewish history and wrote his thesis on Jewish congressman Sol Bloom – publishing it as a book called *America First.*

He was a writer and editor of The Jewish Press and loved President Trump.

I don't always agree with his politics but he is an honest man and a true loyal American. All I want and pray for him is to get married and have a family like his siblings.

My children are really wonderfully caring of me but it is Elliot who has been the most devoted and helpful ever since I suffered a stroke in August 2019.

He moved back home at the time and has never left.

He goes shopping for me, gets my mail, pays my bills, fills up the car with gas, and accompanies me on errands in the city so that I don't have to spend money parking in a garage or drive around in traffic looking for a parking spot.

Elliot also constantly tries to lift my spirits.  My memory has never been great, but it got worse after I suffered my stroke, and this memory loss is a constant source of anxiety for me.  I also feel the effects of getting older in other ways, and I sometimes feel dejected that I no longer am as active as I once was.  Elliot tries his hardest to improve my mood, making jokes, encouraging me to see the positive, and urging me to take walks with him or do some other activity.

The other week, for example, I was lying in bed doing nothing, and Elliot badgered me to attend the engagement celebration of a family friend.  I wasn't in the mood to go, but I finally succumbed to Elliot's urgings, and I'm so happy I did.

I truly have become reliant on Elliot in many ways.  Not just for physical chores and tasks, as I mentioned, but for my spirit.  Elliot is the only one home with me and is the most patient of my three children.

I ask you therefore to please be lenient with my son.  I think he has learned his lesson, and prison time will hurt not just him but me.  If you could find it in your heart, therefore, to only sentence him to probation, I would be ever so grateful.

Sincerely,
Molly Resnick

# EXHIBIT C

B"H     June 23, 2023

Dear Judge Contreras,

This is a first for me - writing a letter about my dear younger (and only) brother, Elliot Resnick.

Yes, as a brother you'd expect me to be subjective, love him, and think of him in glowing terms – and I do. But it is my hope that, in these next few paragraphs, you too can glean a sense of what makes Elliot a truly extraordinary and remarkable individual. From being a devoted caretaker of our mother (may she be well), to leading a humble and altruistic life, to simply being honest to a fault, to being a kind soul - I don't think you'll find many people who lead as virtuous a life.

Let me begin with the following: My brother, while studying for his PhD, was also successfully managing real estate and renting out rooms in Manhattan. Then suddenly, my mother (who lives alone) suffered a stroke, leaving her disoriented and confused. What did Elliot do? He dropped the business (not his doctoral studies) and moved in with my mother to manage her care, her finances, and oversee all her affairs. After all, in Elliot's mind business and money come and go, with no inherent or lasting value. But he only has one mother, and he was going to be the one to care for her.

Indeed, throughout his life, his choices of career and job were motivated - not by salary, benefits, stature, or personal perks, but - by what positive impact he could make on his community and society at large. That is why he became the senior editor of NY's largest Jewish newspaper for over a decade (though he could have, no doubt, found many higher paying jobs). He successfully used this platform in the media to help the underdog, to aid the less fortunate, and to champion important causes that were not always the popular ones.

Just look at the topic he chose for his PhD dissertation (recently published and available to the public). He chose to study and tell the world about Congressman Sol Bloom and his efforts to help

thousands of Jewish refugees flee from the Nazis and immigrate to the United States of America. This was not merely an academic exercise for Elliot. It is an emblematic of who he is.

Though Elliot is a repository of vast wisdom and teaches an online course in the classics (everything from Plato's "Republic" to Immanuel Kant's "Critique of Pure Reason" to "Moby Dick" to "The Federalist Papers") you'd never know it by meeting him. He is perhaps one of the most approachable and humble individuals you can meet and talks to anyone as "one of the guys" without an air of superiority.

Elliot is also devoted and an active member of his community. He has been singing (as a volunteer) in his synagogue choir for 20 years, is the caretaker of the daily morning service, and visits with elderly members; walking with them and sharing his upbeat and humorous disposition with them.

Allow me to conclude on a personal note. Elliot is a sensitive soul. He caringly buys my mother jewelry and flowers (our father passed away 20 years ago). He is the inimitable and loving "Uncle Elliot" for my children. When he visits us in California on the holidays, takes them all (I have many children, thank G-d) to the zoo, bowling, the park, San Francisco, and even to the infamous Alcatraz prison. And he is beloved and admired by so many in his community and beyond.

Indeed, the outpouring of love I have witnessed during his trial from his community and close circle of friends are a true testament to his noble character and selflessness.

Thank you so much for taking the time to read this letter and I wish you much blessing and success,

**Rabbi Raleigh Resnick**
Pleasanton, California

# EXHIBIT D

Dear Judge Contreras:

My name is Herminio Martinez, and I am currently Professor of Education at Herbert H.
Lehman College in The Bronx. I also serve as Executive Director of a CUNY sponsored
Institute. Over the past 40 years I have resided at the same apartment in Manhattan. During
all these years the Resnick family members have been my neighbors. In fact, I have known
Elliot since he was five years old and have had many interactions with him as a young boy,
adolescent, and as an adult.

In my opinion and experience Elliot is an extremely kind, compassionate, idealistic and
empathetic person who is committed to his family and community.  For example,  as a
young man I was impressed by Elliot's kind and supportive treatment towards
elderly residents in our building. He was always respectful, considerate, attentive and
caring. His kindness extended to his immediate family and many others in the community.
This was particularly evident in the period following the unfortunate death of his father.

In later years, I discussed with Elliot his studies, his research, and his writings. I found him
to be extremely bright, idealistic, and always willing to understand and learn. It was my
opinion then and now that Elliot has the intellectual capabilities, convictions grounded in
his profound religious faith and upbringing, and personal attributes to make significant
contributions to society.

It would be inappropriate for me to comment on the pending legal case; however, I know
that as a result of the unfortunate events that have transpired Elliot has suffered
emotionally, personally, and professionally.  I am certain that the religious, caring
and analytical young man that I know has deep regrets and derived painful but valuable
lessons for his future. As a result, I respectfully request the court to consider Elliot's
history, potential contributions to his community and society, and the degree of personal
suffering already experienced.

Thank you for taking the time to consider this request.

Sincerely,

Herminio Martínez, Ph.D.
Professor of Middle and High School Education
Executive Director of The Bronx Institute
Lehman College-CUNY
Voice: (718) 960-8934
Fax: (718) 960-5594
herminio.martinez@lehman.cuny.edu
www.thebronxinstitute.org

# EXHIBIT E

4/2/2024

Dear Judge Contreras,

My name is Tamar Moskowitz (nee Lichtenstein). I have known Elliot Resnick since we were children growing up together in the same building in Washington Heights. His family moved into the apartment right above ours, and our mothers quickly became good friends, ensuring that our families would remain close for many years. I'm one of seven siblings, and Elliot is one of three; together we enjoyed countless games of 'running bases' in our building's playground and many hours of games and fun.

I remember Elliot fondly as a shy and gentle boy, with a sweet smile. When others would argue and fight, as kids naturally tend to do, Elliot would remain soft-spoken and calm, often intervening to diffuse the situation and resume whatever fun childhood activity we were involved in at the time.

As he grew up, Elliot became very close with his father, with whom he shared a love for intellectual pursuit and knowledge. Sadly, his father became ill, and Elliot watched his father suffer terribly and ultimately die from cancer. Throughout that grief-filled time, Elliot helped care for his father despite the emotional pain it caused him to see his suffering. When I visited towards the end, when his father was already on hospice care, I was awed by the loving and respectful way Elliot cared for him.

My family moved from Washington Heights when I was in college, and my aging paternal grandparents took over our apartment. We were very close, and I spent a lot of time with them. Still, I was working and pursuing my college degree at the time and couldn't be there on a consistent basis. Elliot visited my grandparents often, keeping them company and talking and listening to them in turn. He always showed true interest in their stories (my grandfather loved telling and retelling stories from his youth) and validated their life experiences. He also often came downstairs to join them for Sabbath meals so that they wouldn't have to eat alone. And as my grandfather aged and had a difficult time walking, Elliot accompanied him to Synagogue, walking slowly next to him to assist whenever needed. My grandparents often sang his praises to me, and I'm so grateful for the kindness he showed them.

Elliot has always been a gentle, kind and giving person, both as a child and adult. He cares deeply about everyone and everything. I hope and pray with all my being that he be given a second chance to refocus his inner strengths and refined character to continue helping others and bringing joy to people's lives.

Sincerely,

Tamar Moskowitz

# EXHIBIT F

Judge Contreras,

My name is Jeff Gunzenhauser. I am a physician who currently lives and works in the New York City area. I have known and admired Elliot Resnick for the past six or seven years after I was fortunately introduced to Elliot by his sister and brother-in-law. I was quickly drawn to Elliot's extensive breadth of knowledge and his grasp of complex issues and concepts. Furthermore, his wide-ranging subject knowledge and comprehensive understanding of this diverse subject matter is truly inspirational and astounding. He can provide intriguing cognitive content about many worldly topics, including but not limited to literature, history, philosophy, culture, government policy, and religion. I learn from him with each passing encounter and feel blessed that I have such a friend who is generous or spirit and wisdom.

Concerning his character, Elliot is one of the kindest, learned, interesting, logical, spiritual, and genuine people I have ever encountered in my life. As a busy physician, businessman, and socially involved individual, I come into contact with thousands of people annually. Elliot is one of few individuals who has the best interest of humanity at the forefront of his mind, and his words and actions easily demonstrate this fact. He aspires at all times to bring understanding, awareness, and wisdom to mankind and benefit civilization in any way possible. This is clearly seen on his weekly podcast as he delves into the depths of thought and logic and passionately attempts to find truth and clarity from an eclectic group of guests.

I have not seen Elliot as often since the occurrence of this case. In fact, he seems somewhat subdued in recent months, perhaps due to his reflection about the case and his obvious regret and anguish. It is unfortunate to witness such a setback in Elliot's morale and mental state since his intentions are always pure and he is always concerned with goodness and righteousness.

Please contact me if I can be of assistance in any other way.

Sincerely,

Jeff Gunzenhauser, MD

# EXHIBIT G

March 18, 2024

Dear Judge Contreras,

My name is Avi Ciment. I am an author, columnist, father, and chaplain. I write this letter on behalf of Elliot, who I met in 2018. Several years ago, I decided to write articles for The Jewish Press, and Elliot was the editor in chief. Though our working relationship ended in 2021, Elliot and I have remained in touch as friends.

From my very first day that we met, I found a gentle soul. I do not speak in hyperbole when I say Elliot is a truly religious sweet person who was always sensitive to those around him. The Elliot I know has a heart of gold and is truly a nice guy.

Whenever we needed to discuss an article, he always took the time and patience to consider my feelings. As a boss, I never once saw him speak disrespectfully or cop any sort of attitude towards me or anyone for that matter. He is someone who cares deeply about his fellow American, and is constantly helping others, not just by the written word, but in his acts of kindness within the community, and to those that are privileged to know him. Elliot is an asset, trying to improve the world around him and is always willing to help a lending hand to charitable causes without recompense. One time I noticed that many people were talking in synagogue, and I wrote up a flyer, requesting that people respect the sanctuary as they are in the presence of God. Without saying a word about it to Elliot, I opened the newspaper and saw that Elliot had placed a large print of my ad for free, encouraging people to treat the place of prayer with more respect. He did things like that more than once.

I deeply hope that the court considers my words when I tell you Elliot is truly a gentleman.

Sincerely,
Avi Ciment

# EXHIBIT H

March 20, 2024

Dear Judge Contreras:

I am writing in support of the good character of Dr. Elliot Resnick, a dear and longtime friend of our family.  We were introduced to the Resnick family in 2000 after their move to the Washington Heights area of New York City. They rejoined our small community of religious orthodox German Jews after spending some years in Detroit. Elliot's father was a renowned Cardiologist and researcher, sought after in the medical community.  He raised his children to be upright citizens and caring members of their communities. Dr. L. Resnick was a brilliant physician and researcher who inculcated his family with true values of social responsibility, honesty and truth. Elliot is an excellent product of this home.

Elliot is an educated, learned, charitable and a caring member of our community. He has over these last few years become a close member of our family. Often a guest in our home, he has enhanced our lives with his insights and knowledge. We have watched him grow into a young man with strict adherences to practices of charity, kindness and social tolerance. All within the framework of carefully adhering to the laws and customs of our religious Torah observance.

We discussed the events of that fateful day in January many times. It is not in Elliot's nature to be involved in violence or to be confrontational. He is normally quiet and unassuming and usually plays the role of the observer. Elliot fully understands that his subsequent actions were wrong.

It is our hope that you, as the Judge in this case, can apply justice and sentencing with a light hand and mete out a sentence equal to the intent and history of the accused.

Respectfully,

*Henry N. Lehmann*

# EXHIBIT I

**DR. JOHNY HELLMANN**

**NEW YORK, NY**

MARCH 26, 2024

Judge Rudolph Contreras

U.S. District Court

Washington DC

Dear Judge Contreras,

I have been asked to write to you about my friend Elliot Resnick whom I have known nearly since the day that he was born. I consider myself a close family friend, his late father was not only an eminent physician and a wonderful orator, but a warm, generous person with whom I often interacted. Elliot's mother is still a good friend; we often see each other socially and I consider her sharp and witty and always ready to "pitch in" and do interesting things in our community. With parents such as these, it was no wonder that we always had a "soft spot" for Elliot as he was growing up. Except for the few years when the family temporarily moved to Michigan, our families were in close contact, often getting together to share meals or just to exchange ideas.

I consider Elliot a talented writer. He has published books on interesting topics including several titled "Movers and Shakers" which were informative interviews with such personalities as Alan Dershowitz, Governor David Paterson, Steven Emerson, Rabbi Lord Jonathan Sacks, Rabbi Adin Steinsaltz, and Rabbi Julius Berman. I remember that I was very impressed when he landed a job as

Editor of The Jewish Press at a relatively young age, which allowed him ample opportunity to practice and perfect his writing skills. He has also written excellent pieces about Samson Raphael Hirsch, a noted and influential rabbi in Frankfort Germany in the late 1800's, and a book about Congressman Sol Bloom who was chairman of The House Foreign Affairs Committee during the Second World War. His writing talent furthermore leads him to dig deeply into stories making conversations with him not only interesting but also informative.

Elliot has always been a refined, cheery and pleasant person to deal with. I have never seen him turn down an opportunity to help out when necessary. He has on more than one occasion stepped in and chaired a local meeting for me that I was unable to attend. I see Elliot on an almost daily basis, he still has his pleasant demeanor but he is not as happy as he used to be. I certainly hope that as time goes by, he will regain his joy of life and resume his writing and speaking plans. It seems to me that the loss of his father at a young age coupled with his quiet nature makes it hard for him to find tranquility in his life. I can only hope that his mother, his friends and his community will help him get through these difficult times.

I wish him well and hope that he will continue to be an active and involved member of our community. Elliot is sorry that he got swept up in the events going on there at the Capitol at that time and would rather that it had all not happened. I am sure that I speak for many people here in our community when I say that we would miss him if he wasn't here.

Respectfully,

Johny Hellmann, PhD

# EXHIBIT J

**SAMSON AND JUDY BECHHOFER**

New York, New York

September 5, 2024

Dear Judge Contreras,

We are writing to you concerning Mr. Eliot Resnick.

Mr. Resnick and his family have been our friends and neighbors for more than 30 years. We have known Eliot since he was a small boy and now as an adult.  He often joins us for Sabbath meals.

For as long as we have known him, Mr. Resnick has been an upstanding member of our community.  In addition to serving in our Synagogue choir, he on occasion has led the services and lectured on topics of interest to our seniors.  He cares sincerely about the welfare of our congregation and community and maintains strong relationships with some of the greatest rabbinical figures of our time.

In his career as a writer and editor, Eliot has demonstrated compassion for others and a dedication to the truth.

Mr. Resnick's father passed away when Eliot was a young man.  His mother has been widowed for many years and Eliot, who is not married, is her sole companion.  Any period of incarceration will undoubtedly affect her in a very negative way.

We ask that you take all this into account when imposing a sentence on Mr. Resnick.

Very truly yours,

Judy and Samson Bechhofer

# EXHIBIT K

בס"ד

Dear Judge Contreras,

The Purpose of this writing is to give you some background on the life of Elliot Resnick. I am a long time acquaintance of his family from before he was born. His parents are, Dr. Lawrence Resnick, a specialist in endocrinology, and Molly Resnick, a former NBC producer. It is a wholesome home based on integrity, honesty, respect for others, and goal oriented for peacefulness and purpose in life.

Elliot has inherited all of these qualities, making them a part of his life and lives accordingly. As a young man he studied very seriously in Judaic and secular teachings, going on to become a chief editor in a newspaper. He is an intellectual and has much information at his fingertips. He is kind, honest, responsible, and a good friend. His mother suffered a stroke a few years ago and Elliot totally devoted himself to her wellbeing. She has since recovered, thank G-d, but he is still constantly watching over and attending to her needs. I hope this helps give you a better picture and greater understanding of who he is.

Respectfully, Laya Klein